UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| AARON ROBINSON, | ) |
| | ) |
|     Petitioner, | ) |
| | ) |
| v. | )    Case No. 4:17CV4 HEA |
| | ) |
| JASON LEWIS, | ) |
| | ) |
|     Respondent. | ) |

### OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Aaron Robinson's First Amended Petition for Writ of Habeas Corpus, [Doc. No. 13], Petitioner's Motion for Judgment on the Pleadings, [Doc. No. 62], and Respondent's Response to the Court's Show Cause Order, [Doc. No. 64]. For the reasons set forth below, Petitioner's Petition and motion will be denied.

### Facts and Background

On January 3, 2017, Petitioner, proceeding pro se, filed his Petition for Writ of Habeas Corpus. Petitioner raises three claims for relief in his First Amended Petition: 1) his sentence remains unconstitutional under *Miller v. Alabama,* 567 U.S. 460 (2012), in spite of the enactment of Mo. Rev. Stat. § 558.047 and Missouri Supreme Court's July 19, 2016 decision; 2) a *Batson* claim involving the strike of an African-American juror; and 3) trial counsel was ineffective for failing

to offer a modified self-defense jury instruction hypothesizing "multiple assailants."

### The Court's March 26, 2020 Order

On March 26, 2020, Petitioner's First Amended Petition for Writ of Habeas Corpus was ordered stayed by this Court because Petitioner's petition involves both exhausted and unexhausted claims. Petitioner's *Batson* and ineffective assistance of counsel claims were properly exhausted in state courts on direct appeal and post-conviction relief proceedings, respectively. However, the Court found Petitioner's arguments in support of his first claim for relief each arise from the alleged failure of § 558.047 to bring Petitioner's sentence into conformity with *Miller* and *Montgomery v. Louisiana,* 136 S. Ct. 718 (2016) were unexhausted claims. Petitioner's last pleading filed before the Missouri Supreme Court, his motion for reconsideration, was filed on March 25, 2016, months before § 558.047 became law. Because Petitioner had not presented the issues regarding deficiencies of § 558.047 before Missouri state courts, the Court found it could not rule on Petitioner's unexhausted claims and ordered the stay until Petitioner exhausted his state court remedies. Petitioner was ordered to pursue state court remedies within thirty days and return to this Court within thirty days after his state court exhaustion was completed.

2

May 4, 2022 Status Report Order

On May 4, 2022, the Court ordered a status report to be filed by the parties regarding the status of Petitioner's claims in state court. On June 2, 2022, Respondent filed a status report indicating he has not received any state court notice being filed by, or on behalf of, Petitioner. Respondent also conducted a search of Case.net, Missouri's centralized electronic court case management and filing system, and was unable to locate any case filed by Petitioner relating to his convictions and sentences since the Court's March 26, 2020 Order. Respondent argues the stay should be lifted and Petitioner's case dismissed, as Petitioner failed to comply with the Court's Order and has not made any effort to exhaust his claims to state court.

Motion to Remand Motions

In lieu of a status report, Petitioner filed a Motion to Remand, requesting more time to wait for the state court to resolve an "unexhausted issue" about taking a "Mental Competency test prior to trial." The unexhausted claims in this case are relevant to those arguments in support of his first claim for relief each arise from the alleged failure of § 558.047 to bring Petitioner's sentence into conformity with *Miller* and *Montgomery*, not a mental competency test. Petitioner also filed a Motion to Compel the Court to Respond to his remand motion.

3

On February 3, 2023 the Court denied Petitioner's Motion to Remand and granted Petitioner 30 days to amend his petition to delete the unexhausted claims. On February 24, 2023, Petitioner filed a letter to the Court asserting that he had exhausted his *Miller v. Alabama* claim and had Petitioned for Rehearing and Review of Sentencing, thus, according to Petitioner, establishing that he had exhausted his state court remedies.

Thereafter, May 22, 2023, Petitioner filed the Motion for Judgment on the Pleadings. Respondent filed his response to the Court's Show Cause Order regarding this motion on June 20, 2023.

## Legal Standard

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year statute of limitations on the filing of federal habeas petitions. *Rhines v. Weber*, 544 U.S. 269, 274 (2005). "Although the limitations period is tolled during the pendency of a properly filed application for State post-conviction or other collateral review, the filing of a petition for habeas corpus in federal court does not toll the statute of limitations." *Id.* at 274-75 (citations and internal quotations omitted). Because of AEDPA's one-year statute of limitations and the exhaustion requirement, some petitioners come to federal court with "mixed" petitions, meaning their petitions include exhausted and unexhausted claims. *Id.* at 275. If the district court dismisses the petition because it contains unexhausted

4

claims and the dismissal occurs after the one-year statute of limitations has run, the petitioner is barred from returning to federal court after exhausting the unexhausted claims. *Id.*

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA") applies to all petitions for habeas relief filed by state prisoners after the statute's effective date of April 24, 1996. When reviewing a claim that has been decided on the merits by a state court, AEDPA limits the scope of judicial review in a habeas proceeding as follows:

> An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

In construing AEDPA, the United States Supreme Court, in *Williams v. Taylor*, held that:

> Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the U.S. Supreme Court] on a question of law or if the state court decides a case

5

> differently than [the U.S. Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the U.S. Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

529 U.S. 362, 412–13 (2000). Furthermore, the *Williams* Court held that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." 529 U.S. at 409.

A state court decision must be left undisturbed unless the decision was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Courtt of the United States, or the decision was based on an unreasonable determination of the facts in light of the evidence presented in state court. *Colvin v. Taylor*, 324 F.3d 583, 586-87 (8th Cir. 2003).

A decision is contrary to United States Supreme Court precedent if it decides a case based on a different rule of law than the rule dictated by United States Supreme Court precedent, or it decides a case differently than the United States Supreme Court did on materially indistinguishable facts. *Id*. A decision may only be overturned, as an unreasonable application of clearly established United States Supreme Court precedent, if the decision is both wrong and an objectively unreasonable interpretation or application of United States Supreme Court precedent. *Id*. A federal habeas court may not disturb an objectively reasonable

6

state court decision on a question of federal law even if the decision is, in the federal court's view, wrong under Eighth Circuit precedent, and even if the habeas court would have decided the case differently on a clean slate. *Id*. State court factual determinations are presumed to be correct, and this presumption can only be rebutted by clear and convincing evidence. 28 U.S.C. §2254(e)(1).

## Ineffective Assistance of Counsel

To prevail on his ineffective assistance of counsel claims, Petitioner must show that his attorney's performance fell below an objective standard of reasonableness and that he was prejudiced thereby. See *Strickland v. Washington*, 466 U.S. 668, 688 (1984). With respect to the first *Strickland* prong, there is a strong presumption that counsel's conduct fell within the wide range of professionally reasonable assistance. *Id*. at 689. Thus, "counsel should be strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," and the "burden to show that counsel's performance was deficient rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013) (quotation marks and citation omitted); see also Strickland, 466 U.S. at 689 (noting that a petitioner must show that the challenged action was not part of a sound trial strategy); *Abernathy v. Hobbs*, 748 F.3d 813, 816 (8th Cir. 2014) (explaining that reviewing courts must refrain "from engaging

7

in hindsight or second-guessing of trial counsel's strategic decisions") (citation omitted)).

To establish "prejudice," the petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "Merely showing a conceivable effect is not enough; a reasonable probability is one sufficient to undermine confidence in the outcome." *Paulson v. Newton Corr. Facility*, 773 F.3d 901, 904 (8th Cir. 2014) (citation omitted). Although *Strickland* requires a showing of both deficient performance and prejudice, a "finding that no prejudice exists is sufficient to conclude that counsel was not constitutionally ineffective – [courts] need not make a determination regarding deficiency." *Holder v. United States*, 721 F.3d 979, 987 (8th Cir. 2013).

"Taken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 202 (2011)).

> First, under *Strickland*, the state court must take a predictive judgment about the effect of the alleged deficiencies of counsel on the outcome of the trial, focusing on whether it is "reasonably likely" that the result would have been different absent the errors. *Strickland*, 466 U.S. 696. ... To satisfy *Strickland*, the likelihood of a different result must be "substantial, not just conceivable." *Id.*
>
> Under AEDPA, [federal courts] must then give substantial deference to the state court's predictive judgment. So long as the state court's decision was not "contrary to" clearly established law, the remaining question under the

8

> "unreasonable application" clause of § 2254(d) is whether the state court's determination under the Strickland standard is unreasonable, not merely whether it is incorrect. [*Harrington v. Richter*, 562 U.S. 86, 112, 101 (2011)]. This standard was meant to be difficult to meet, and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at [102.]

*Williams*, 695 F.3d at 831-32. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington*, 562 U.S. at 105.

In this context, a state court's findings of fact made in the course of deciding a claim of ineffective assistance of counsel are presumed to be correct. *Odem v. Hopkins*, 382 F.3d 846, 849 (8th Cir. 2004).

## Discussion

The Court may not grant habeas relief under 28 U.S.C. § 2254 unless the petitioner has "exhausted the remedies available in the courts of the State," "there is an absence of available State corrective process," or "circumstances exist that render such process ineffective to protect the rights of the applicant." § 2254(b)(1). The petitioner "has the burden to show that all available state remedies had been exhausted or that exceptional circumstances existed." *Carmichael v. White*, 163 F.3d 1044, 1045 (8th Cir. 1998). In *Rhines*, the Supreme Court held that "it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his

9

unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." 544 U.S. at 278. As the Court has previously noted, a stay *was* initially appropriate given the special circumstances of the state court proceedings and the enactment of § 558.047. In accordance with the dictates of *Rhines*, and as noted in the Court's March 26, 2020 Order, "reasonable time limits [were placed] on [P]etitioner's trip to state court and back." *Id.* at 278. On March 26, 2020, Petitioner was given thirty days to pursue state court remedies. To date, there is no information before the Court that, Petitioner has, or has attempted, to do so.  The information Petitioner uses to attempt to establish that he has exhausted his claims in the state court are unavailing. As Respondent correctly argues, *before* this Court's stay order, Petitioner filed pro se correspondence with the St. Louis City Circuit Court in his original criminal case and his Rule 29.15 post-conviction case. The state court construed Petitioner's correspondence in the criminal case to advance two motions, a motion for rehearing and review of sentencing and a motion for reduction of sentence. The state court denied both motions on January 7, 2021. The state court construed the pro se correspondence in the post-conviction case to be a motion to reopen the post-conviction case and denied that motion on November 19, 2020. While the circuit court's orders in both cases could be read to deny Petitioner's claims on the merits, the circuit court did not have authority to

10

consider his procedurally improper motions as a matter of state law. In the criminal case, Petitioner's sentence was final on April 23, 2010, so the circuit court did not have jurisdiction to consider his motions to review or reduce the sentence. *Zahnd v. Van Amburg*, 533 S.W.3d 227, 230 (2017).

As to the pro se motion in the post-conviction case, Rule 29.15 motions are governed by Missouri's rules of civil procedure. Thus, a Rule 29.15 motion court only retains authority to reopen the case for thirty days. *Eastburn v. State*, 400 S.W.3d 773–74 (Mo. 2013). "After the expiration of this thirty-day period, the circuit court generally lacks the ability to reopen a final judgment." *Id.*

In accordance with *Rhines,* the Court will proceed with the exhausted claims since dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief, as is the case here. *Id.* at 270.

**Petitioner's Exhausted Claims**

Petitioner's claims that have been exhausted in the state court are that he was denied equal protection in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986) when the State struck Veniremember Dell Jones and that his trial counsel was ineffective for failing to request a modification to the self-defense jury instruction to include language hypothesizing the existence of "multiple assailants."

11

*Batson* **Challenge**

Petitioner raised his equal protection claim in the State court. On direct appeal, the Missouri Court of Appeals found that the trial court did not err in accepting the prosecutor's explanation for striking venireperson Jones:

> During voir dire, the prosecutor asked the venire panel whether anyone was acquainted with the courtroom staff. Jones raised her hand and said that she was familiar with one of the sheriffs but did not know her name. Jones explained that she was employed by the city. As part of her duties, Jones taught classes to city employees. She said that she did not teach any classes to sheriffs, but recognized one in the courtroom.
>
> Later, the prosecutor asked whether any venirepersons would be unable to consider the full range of punishment in the event that Defendant was found guilty of armed criminal action. One venireperson indicated that he thought the armed criminal action count would be "superfluous" if the jury found Defendant guilty of first-degree murder because he expected the sentences would run concurrently anyway. After a brief discussion with the trial court, the venireperson said that he could consider "the high end" of a sentencing range depending on the evidence that was presented. While this venireperson was talking, Jones said, "right," loudly enough for the prosecutor to hear her. Without being specifically asked, Jones stated that she agreed with the previous speaker that she could consider the range of punishment based on the evidence presented.
>
> At the conclusion of voir dire, the State used one of its six peremptory strikes to remove Jones. Defendant raised a Batson challenge, accusing the prosecutor of striking Jones on the basis of her race. The trial court identified Jones as an African-American female. The prosecutor explained that she struck Jones because

12

she seemed to have a dominant personality and because she taught classes to city employees she might tend to be more judgmental of the prosecutor's trial performance:

> [PROSECUTOR]: Your Honor, Ms. Jones is-works for the city, and she teaches a number of classes to city employees, including a class on attitude or attitude adjustment. She had a very gregarious and infectious personality. She seemed to be really making efforts to talk to everyone around her in the jury area. I also noticed that she made a lot of a ... very big facial expressions throughout voir dire, but wouldn't necessarily respond verbally, just made very big facial expressions. And it was my impression of Ms. Jones that she would be almost an overwhelmingly strong candidate for the jury pool because of the fact that she teaches these classes.
>
> And furthermore, I thought that as a teacher, particularly on attitude, I thought that she might be sort of more judgmental of me and my performance in the courtroom because she does teach classes.

Defense counsel asserted that Venireperson McCaffrey (McCaffrey), a retired schoolteacher, was similarly situated "as far as the teaching aspects." The prosecutor responded by pointing out that McCaffrey taught first grade; she did not "teach adults on attitude issues."

The trial court noted that the State's description of Jones as having a "very gregarious personality was accurate" while, in contrast, McCaffrey, was "extremely quiet." The trial court found that "there is some validity to the State's notations as to the personality, and that that is not a pretext, that that is something that is a legitimate observation that might have a bearing on the interaction of the jurors, and sufficiently distinguishes Ms. Jones from Ms. McCaffrey." Accordingly, the trial court overruled

13

Defendant's Batson challenge with respect to the State's strike of Jones.

The Missouri Court of Appeals went on to set out the three-part test established by *Batson* then applied that test to the relevant facts to conclude that the trial court did not clearly err in finding the prosecutor's strike was not racially motivated. The Court of Appeals explained:

> Here, Defendant raised a Batson challenge to the State's strike of Jones, and the trial court identified Jones as an African-American female. Thus, the first step of the Batson inquiry was satisfied. The prosecutor then offered two race-neutral reasons for striking Jones. First, the prosecutor noted that Jones exhibited a "very gregarious and infectious personality," that she made "big facial expressions," and that she had made an effort to talk to everyone in the jury area. The prosecutor indicated that she thought Jones would be an "overwhelmingly strong candidate for that jury pool," presumably meaning that the prosecutor was afraid that Jones would dominate the deliberations due to her strong personality. Second, the prosecutor pointed out that Jones taught classes to city employees, including classes on attitude adjustment, and worried that Jones, due to her experience teaching these classes, would be especially critical of the prosecutor's courtroom performance. As these reasons were facially race neutral, the second step of the Batson inquiry was satisfied.
>
> The burden then shifted to Defendant to prove that the State's proffered reasons for striking Jones were merely pretext for intentional racial discrimination. Defendant's response to the prosecutor's facially race-neutral reasons for the strike was that

> McCaffrey, apparently a "European-American juror," was also a teacher and had not been struck by the State. However, as the prosecutor and the trial court observed, McCaffrey was not similarly situated to Jones. While both had a teaching background, McCaffrey was a retired first-grade teacher while Jones was currently employed to teach "attitude issues" to adult city employees a particular concern of the prosecutor's because she thought that that subject matter would lead Jones to be more judgmental regarding the prosecutor's courtroom performance. Equally problematic, Jones actively participated in voir dire, speaking out even when other jurors were talking. In contrast, McCaffrey remained reserved until she was specifically called upon by the prosecutor. It was this personality difference that led the prosecutor and the trial court to conclude Jones's might be a particularly dominant voice on the jury if seated.

The Missouri Court of Appeals properly articulated the *Batson* standard and discussed its conclusion that the trial court's conclusion that the prosecutor's reasoning was not improperly based on Ms. Jones' race was not erroneous. This conclusion is supported by the record and is not an unreasonable application of federal law. This ground for relief is denied.

**Ineffective Assistance of Counsel**

Petitioner claims counsel was ineffective for failing to request a modification to the self defense jury instruction to include the existence of "multiple assailants."

15

The Missouri Court of Appeals acknowledged the required standard upon which to assess counsel's performance under *Strickland*. While it is possible to modify a self-defense instruction against an attack by multiple assailants, the Court concluded that the instruction would not have been proper even if requested by counsel since there was no evidence Petitioner acted in self-defense against multiple assailants. The Appellate Court explained:

> Six eye witnesses testified consistently that Victim's friends never confronted or attacked Movant during the encounter between Movant and Victim. Movant himself testified that Victim struck him first, that Movant struck back, that Victim drew a gun, and then Movant then fired because "it was me or him." Nowhere does Movant contend any of Victim's friends struck him, drew guns on him, or attempted to strike him. In fact, Movant's own testimony makes it clear that these other individuals were across the street when Movant shot Victim. Although Movant testified these other individuals were "running towards us" from across the street, this occurred after Movant drew his gun and there was no evidence these other individuals were assailing Movant in any way.

Since there was no evidence of multiple assailants, Petitioner was not prejudiced by counsel not seeking the modification. Indeed, as the Missouri Court of Appeals additionally explained:

Second, even if the "multiple assailants" modification was applicable, we find the record does not support a finding that Movant was prejudiced. Instruction No. 7 did not prevent the jury from considering the presence and conduct of Victim's friends at the time of the shooting. See Bolden, 423 S.W.3d at 811. The self-defense instruction clearly advised the jury to "consider all of the evidence in the case in determining whether the defendant acted in lawful self-defense" (emphasis added). See State v. Goodine, 196 S.W.3d 607, 623 (Mo. App. S.D. 2006) (holding self-defense instruction omitting "multiple assailants" language was not plain error because it instructed the jury to "consider all of the evidence," allowing the jury to consider the actions of individuals other than the victim); see also Mangum, 390 S.W.3d at 864 (finding the finding plain error and reversing where self-defense instruction both erroneously omitted "multiple assailants" language and also failed to instruct the jury to "consider all of the evidence"; distinguishing Goodine). Instruction No. 7 also defined "reasonable belief" as "a belief based on reasonable grounds, that is, grounds that could lead a reasonable person in the same situation to the same belief" (emphasis added). Bolden, 423 S.W.3d at 811 (affirming denial of post-conviction relief, holding self-defense instruction not defective for failing to include "multiple assailants" modification where reasonable belief is defined in terms of "a reasonable person in the same situation").

To obtain relief, Movant must show that counsel's failure to request the "multiple assailants" modification deprived Movant of his right to a fair trial. Id. However, Instruction No. 7 allowed the jury to consider the presence and conduct of victim's friends when determining whether Movant's use of force in self-defense was reasonable, and trial counsel made this argument to the jury in closing arguments. Therefore, Movant failed to establish prejudice because the instructions did not mislead the jury into believing it could only consider Victim's conduct when determining whether Movant's use of deadly force was reasonable. See id. (in a claim

17

alleging ineffective assistance based on instructional error, "prejudice is the potential for confusing or misleading the jury").

The conclusion of the Appellate court that Petitioner was not prejudiced was reasonable based on the evidence presented at trial. Since Petitioner cannot establish prejudice, under *Strickland*, Petitioner's claim of ineffective assistance of counsel fails.

## Conclusion

For the foregoing reasons, the Court concludes none of the grounds in Petitioner's Petition entitle him to relief.

## Certificate of Appealability

The Court finds dismissal of the petition is not debatable, reasonably subject to a different outcome on appeal, or otherwise deserving of further proceedings. Therefore, a certificate of appealability will not be issued by this Court. *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983). If the Petitioner desires further review of his motion, he may request issuance of a certificate of appealability by a circuit judge of the Eighth Circuit Court of Appeals.

Accordingly,

**IT IS HEREBY ORDERED** that the First Amended Petition for Writ of Habeas Corpus [Doc. No. 13] is **DENIED**.

**IT IS FURTHER ORDERED** that no certificate of appealability shall issue.

A separate judgment in accordance with this Opinion, Memorandum and Order is entered this same date.

Dated this 18th day of September, 2023.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE